# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN R. BAILEY,

        **Plaintiff,**

v.                                         **CIVIL ACTION NO. 1:03CV243**

JO ANNE B. BARNHART,
COMMISSIONER
OF SOCIAL SECURITY,

        **Defendant**.

## <u>REPORT AND RECOMMENDATION/OPINION</u>

On November 6, 2003, Plaintiff John R. Bailey ("Plaintiff"), through his counsel Brock M. Malcolm, filed a Complaint in this Court pursuant to 42 U.S.C. § 405(g), to review a denial of Disability Insurance Benefits ("DIB"), under the Social Security Act [Docket Entry 1]. On January 14, 2004, Defendant Jo Ann B. Barnhart, Commissioner of Social Security ["Defendant"], through her counsel, Helen C. Altmeyer, filed a Motion to Dismiss Plaintiff's Complaint [Docket Entry 5]. On January 23, 2004, Plaintiff filed his Brief Opposing Defendant's Motion to Dismiss [Docket Entry 6]. This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

On October 13, 2004, the Court held a hearing on Defendant's Motion to Dismiss. Plaintiff was present in person and by his counsel, Brock Malcolm and Travis Fitzwater, and Defendant was represented by her counsel, Quinn Dogget, appearing by telephone.

## I. EVIDENCE BEFORE THE COURT

This matter is complicated, first because it involves a prior application for DIB filed over 25 years ago, and second, because most of the documents from that prior application were destroyed by the Social Security Administration pursuant to its policy regarding retention of denied claims. The undersigned finds the following facts are either supported by the few documents still in existence

or were not disputed by the parties.

Plaintiff was born on April 25, 1946, and had received Disability Benefits based on a 1973 application. Plaintiff became ineligible for further childhood benefits upon his marriage on March 18, 1978, at age 32. The only record available (Plaintiff's 1981 application for SSI), shows he last received a monthly payment of $64.90 in March 1978. There are no details in the record regarding Plaintiff's childhood benefits; however, Plaintiff contends it was based on lifelong mental retardation, and Defendant does not dispute this contention.

At some point between 1970 and 1980, Plaintiff apparently worked on a local farm. No details are available regarding this employment; however, Plaintiff has stated the work was sparse and heavily accommodated. Defendant did not dispute this contention.

Plaintiff's father died intestate on October 14, 1978, leaving Plaintiff one-half the family farm, subject to Plaintiff's mother's dower interest.

On January 20, 1981, Plaintiff filed an application for Supplemental Security Income ("SSI"). (Defendant's Exhibit 3). This application indicated that Plaintiff had previously filed for SSI, but was "denied for excess resources." Plaintiff's and his wife's sole income at the time was listed as $176.00 from Aid to Families with Dependant Children, and $134.00 in food stamps. This supports Plaintiff's assertion that the "excess resources" were some inheritance from his deceased father, most likely the one-half interest in the family farm.

There was no DIB application filed at this time, and no evidence Plaintiff was represented by counsel during this time.

SSA sent Plaintiff for a Psychological Assessment, performed by Jo Ledwell, Ph.D., on March 16, 1981 (Defendant's Exhibit 19). Dr. Ledwell observed that Plaintiff's personal hygiene

was poor and he was shabbily dressed. He "had a beard of a couple of weeks duration [and] [h]is hands were so dirty that they soiled the test materials, and his hair was thick with oil and coated with dandruff." Dr. Ledwell noted Plaintiff also had a speech impediment, but it improved markedly when he spoke slowly. She noted that Plaintiff was not under the care of a physician, and not medicated. Plaintiff had dropped out of school in the seventh grade at age 16 because he needed to go to work. He said he was last employed about 10 years earlier, working on a farm.

Testing indicated Plaintiff's IQ was 74 verbal, 74 performance, and 72 full scale. Dr. Ledwell noted that Plaintiff appeared eager to please, was pliable and agreeable, and seemed to be trying to do his best. She found the test scores valid and reliable. She also noted he was non-verbal, possibly because of his speech impairment.

Dr. Ledwell indicated testing for organic brain damage was "slightly ambiguous." The personality test had to be read to Plaintiff, and suggested social desirability, "or the attempt to 'put the best foot forward.'" There were also indications of excessive use of repression and denial in a naive and insightless manner, lack of flexibility in adaptation, and a poor tolerance for stress and pressure. It also indicated a naive hysterical view of the world and self.

Dr. Ledwell opined that, essentially, Plaintiff's mental status examination was negative. He denied suicidal rumination and all components of psychoticism as well as obsessions, compulsions, and phobias. His stream of talk was relevant and coherent, and he was fully oriented. He had never been hospitalized for psychological disturbance. His judgment was intact, but insight was limited. Plaintiff described his predominant mood as "happy," but objectively he appeared slightly anxious. Dr. Ledwell opined that Plaintiff had sufficient intellectual ability to understand and implement simple instructions under ordinary supervision. She further felt he should be able to meet quality

3

standards and production normal in work commensurate with his intellectual level. Further, he was found competent to manage his financial affairs.

On March 24, 1981, SSA denied Plaintiff's application for Title XIV SSI benefits at the Initial level (Defendant's Exhibit 4). This decision was apparently based entirely on Dr. Ledwell's psychological evaluation of March 16, 1981. There is no indication that a request for reconsideration was filed, and again, no indication that Plaintiff was represented by counsel during this application.

On August 12, 1981, Plaintiff appointed paralegal Dale Thien of West Virginia Legal Services, to act as his representative in connection with "a" Social Security claim. (Defendant's Exhibit 5). There is no way to determine from this document what claim was involved.

On September 4, 1981, Plaintiff filed another application for Title XIV SSI benefits with a protective filing date of August 31, 1981 (Defendant's Exhibit 6). On this application, Plaintiff stated he had no income, but had sold his ½ undivided interest in 147 acres with coal rights to his mother in December 1981 for $3500.00. The property was not sold on the open market. Under "Remarks," someone (clearly not Plaintiff) wrote:

> We own the ground our trailer is on. John's mother was to give him the title to the trailer as a part of the sale price of his interest in the family farm. So far as we know she has never transferred this title. We have never received any tax notice for the trailer.
>
> Sharon's parents deeded the ground to us as a wedding gift in about 1977.
>
> Our bills have been unpaid for the past several months. We receive $277.00 in food stamps, but have no other income. John's mother was paying him 100.00/month on the purchase of a piece of property. She paid her last payment in July, 1981. We will receive no more.
>
> .... John's mother has never made good on the full purchase price of his interest on the farm. She tricked Sharon into signing the deed. We feel the sale is invalid, **and are working with legal aid.** His mother is unlikely to co-operate with Social

4

Security.

(Emphasis added).

On October 5, 1981, Plaintiff filed what appears to be his first application for DIB (Title II) (Defendant's Exhibit 2). The application itself is not in the record, only the Disability Determination and Transmittal form dated October 26, 1981 (SSA-831). The form indicates there were "concurrent Title II/SSI [claims], and "SSI claim held in DO." The SSI claim being "held in DO" was the August 31, 1981 SSI claim.

Regarding Plaintiff's October 1981 DIB claim, the document indicates that Plaintiff had a date last insured ("DLI") of June 30, 1980. There is no further indication of when or where Plaintiff had worked, except that he was classified as a "Farm Hand." The determination stated that Plaintiff's diagnosis was "Mental Retardation," and he was found not disabled through the date of the current determination. There is no indication that Plaintiff ever requested reconsideration of this determination, and no evidence that Plaintiff was represented by counsel regarding the DIB claim.[1]

On February 8, 1982, SSA denied Plaintiff's August 31, 1981 application for SSI, stating only:

> In December 1980, you sold property which was worth $18,485.00 so that you and your wife could get Supplemental Security Income Payments. Since the value of the property received – $3,500.00 – was less than what your property was worth, we have to count $14,985.00 as uncompensated value. We have to count this amount toward your $2,250.00 resource limit until 12/82.

(Defendant's exhibit 7). This document was carbon copied to paralegal Dale Thien of Legal Aid.

On November 16, 1982, Plaintiff filed a third application for SSI and a second application

---

[1]While Defendant states that Mr. Thien was representing Plaintiff on this claim, there is no evidence to that effect. All evidence regarding Legal Aid representation discusses the SSI claim only.

5

for DIB. (Defendant's Exhibit 8 at page 3 and Plaintiff's Exhibit A). The Disability Determination and Transmittal form (SSA-831-US) for these claims indicates there were "Concurrent Title II/Title XVI" claims, but that this time it was the "Title II claim held in DO [District Office]." There is no evidence that Plaintiff or his representative, if any, received this determination. Even if he did, however, the form expressly indicates the Title II (DIB) claim was being "held" in the District Office. Citing only this same document, Defendant contends:

> A technical denial was issued on Plaintiff's DIB application indicating that Plaintiff had previously had an unfavorable determination after June 30, 1980, the date his insured status expired.

(Defendant's Brief at 2). There is, however, no indication on the form that the claim was "denied" for any reason, and no mention of a "technical denial" anywhere in the remaining record. Defendant states: "The ALJ found no reason to reopen the DIB denial dated October 26, 1981." This is a mistake of fact. The ALJ never even mentioned a DIB claim. Defendant also contends "Plaintiff was once again represented by counsel regarding his applications." While true Defendant was, by this time, represented by attorney Bailey, there is no indication the attorney was even aware of a DIB claim, much less of it having been "held" in the District Office. Attorney Bailey, in a letter to SSA, denied any knowledge of the DIB claim.

Defendant alleges this was a "technical denial" of the DIB claim. However, precisely the same wording ("held in DO") was used in the Disability Determination and Transmittal dated October 26, 1981. That form also noted there were "concurrent filings." In that case, however, it was the "SSI claim [that was] held in DO." Significantly, that SSI claim that was "held in DO," was later denied due to excess resources in a separate "Notice of Disapproved Claim" on February 8, 1982 (Defendant's Exhibit 7).

6

It is undisputed that attorney Harold Bailey began representing Plaintiff later during the pendency of the SSI claim, but there is no evidence anyone was representing Plaintiff at this point in the administrative process, or that anyone besides SSA was even aware of the Title II claim being held in the District Office. Plaintiff filed a Request for Hearing. SSA obtained additional evidence, including a Medical Examination performed by Charles T. Lively, M.D. and two Residual Functional Capacity Assessments. Administrative Law Judge Milton P. Shore held a hearing some time in September or October 1983. A report of a Psychiatric Evaluation performed by Michael D. McNeer, M.D., was submitted during the hearing.

On October 31, 1983, Judge Shore issued a decision finding that Plaintiff had been under a "disability," as defined in the Social Security Act, since November 16, 1982, the date of his application (Defendant's Exhibit 8 at page 4). Judge Shore discussed only Plaintiff's SSI applications. There is absolutely no mention of any DIB claims in the decision. Judge Shore found Plaintiff had severe mental retardation, a speech impediment, and generalized anxiety disorder with significant dependency traits. He also found the severity of these impairments met or equaled the requirements of 12.05C, Appendix 1, Subpart P, Regulations No. 4, and had precluded Plaintiff from working for at least 12 continuous months. Significantly, in order to meet Listing 12.05C, a claimant must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22." (Emphasis added).

Judge Shore based his decision that Plaintiff was disabled on psychologist Ledwell's 1981 psychological assessment, psychiatrist McNeer's psychiatric evaluation, and the Judge's own observations at the administrative hearing. He specifically found Plaintiff was unable to read; did

7

not know the name of his home community, but could go places if accompanied; could not subtract five from ten; could not add five and five; and had no concept of a half dollar or a 50-cent piece. He noted Plaintiff testified Lincoln was president of the United States. He also noted that Plaintiff had "tried to work on a farm, but after burning the tractor down, was fired." The Judge also observed that Plaintiff was unkempt, disheveled, unshaven, uncombed, and "was obviously very slow of mentations and had a speech defect."

In his decision, Judge Shore specifically mentioned Plaintiff's prior applications for SSI filed on January 20, 1981, and September 4, 1981. He discussed reopening those claims, but found he could not, but only because Plaintiff was above the required resource limit until December 1982, and under the Regulations, "the claimant therefore cannot be paid under the first and second application in this case" (Defendant's Exhibit 8 at page 3). There is absolutely no mention of any prior or current DIB claim.[2]

Judge Shore concluded:

The component of the Social Security Administration responsible for authorizing supplemental security income payments will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the month(s) for which payment will be made.

Id. at page 4.

The record therefore shows that Plaintiff filed applications as follows:

September 23, 1974– SSI (Title XVI)- benefits awarded until either marriage or father's death in 1978, although overpayment was subsequently found.

January 20, 1981 – SSI- denied at initial administrative level, no request for reconsideration or

--------

[2]The undersigned notes there is no income limit requirement for DIB.

8

appeal filed. Plaintiff not represented by counsel.

August 31, 1981 – SSI- originally "held in DO," subsequently denied by separate document due to excess resources. Plaintiff was represented on this claim by a paralegal from Legal Aid.

October 1981- DIB (Title II) – denied at initial level on medical grounds (evidence from old SSI claim, during which Plaintiff was not represented). No request for reconsideration or appeal filed. Plaintiff was not represented by counsel on this claim.

November 16, 1982 – SSI (Title XVI) and DIB (Title II). Found disabled on SSI claim. SSI benefits awarded. DIB claim "held in DO." Administrative Law Judge discussed prior SSI applications, but found he could not reopen prior SSI determinations due only to excess resources. There is no mention of any DIB claim.

Plaintiff apparently continued receiving his SSI benefits without incident through early 2002, when he appeared at the SSA office for a Continuing Disability Review ordered by SSA. According to Plaintiff's counsel (undisputed by Defendant), at some point during the Continuing Disability Review, an SSA employee discovered that Plaintiff may have been eligible for some minimal DIB benefits based on his having worked as a farm hand 20 or 30 years earlier. The SSA employee assisted Plaintiff in filing the February 5, 2002 DIB application at issue here. The evidence indicates Plaintiff was not represented at this point in time. The 2002 application was denied at the Initial Level.

Plaintiff again appointed attorney Harold E. Bailey, Jr., as his representative on April 29, 2002 (Plaintiff's Supplemental Brief, Exhibit E, Page 2). Three days later, Plaintiff filed a "Request for Hearing" (form HA-501), under cover of a letter also entitled "**REQUEST FOR HEARING**" (Id. at page 1). In the cover letter, counsel contended that Plaintiff should be paid Title II benefits

based on his Title XVI application of January 20, 1981, which he contended "was not previously adjudicated due to a clerical error, as no [Title] II application was taken at that time."

On May 14, 2002, Hearing Office Chief Administrative Law Judge Steven D. Slahta wrote to Plaintiff's counsel:

> We have received your client's request for a hearing before an Administrative Law Judge (ALJ). This letter tells you about the hearing process and things you should do now to prepare for the hearing. We will mail a Notice of Hearing to you and your client at least 20 days before the date of the hearing to tell you its time and place.
>
> The Hearing
>
> At the hearing, you and your client may present his case to the ALJ who will hear and decide it. The ALJ will consider the issue(s) you or your client have raised and the evidence now in his file and any additional evidence you provide. The ALJ may consider other issues as well, and, if necessary, change parts of the previous decision that were favorable to your client. The Notice of Hearing will state the issues the ALJ plans to consider at the hearing.
>
> Because the hearing is the time to show the ALJ that the issues should be decided in your client's favor, we need to make sure that his file has everything you want the ALJ to consider. You and your client are responsible for submitting needed evidence. After the ALJ reviews the evidence in the file, he or she may request more evidence to consider at the hearing.
>
> Providing Additional Evidence.
>
> If there is more evidence you want the ALJ to see, get it to us as soon as possible. If you need help, you should contact us immediately. You may ask the ALJ to issue a subpoena that requires a person to submit documents or testify at the hearing.

(Plaintiff's Exhibit F).

Also on May 14, 2002, a Group Supervisor for the SSA Office of Hearings and Appeals sent attorney Bailey a letter requesting he "complete the enclosed questionnaires regarding your client's recent medical treatment, medications, and work history to expedite the processing of your client's hearing request" (Id.).

Over four months after the Request for Hearing was filed, Administrative Law Judge ("ALJ")

Jay Levine sent a Notice of Hearing to Plaintiff, with a carbon copy to counsel. (Plaintiff's Exhibit

G). The Notice states as follows:

> I have scheduled your hearing for . . . Monday . . . October 7, 2002 [at] 9:00 AM [at
> the] Hampton Inn 1515 Johnson Avenue Bridgeport, WV 26330.
> . . . .
> **Issues I Will Consider In Your Case**
> The hearing concerns your application of February 5, 2002, for a period of disability
> and Disability Insurance Benefits under sections 216(i) and 223(a) of the Social
> Security Act (Act).
> I will decide if you have enough earnings under Social Security to be insured for
> Disability Insurance Benefits. If you do, I must decide if you became disabled while
> insured.
> . . . .
>
> **More About the Issues**
> I plan to look with special care into the issue of whether you were disabled on any
> date through June 30, 1980, when you were last insured for disability benefits.
> . . . .

(Id.).

That same date, ALJ Levine sent a letter to Vocational Expert Timothy E. Mahler, noting that

Plaintiff had a hearing scheduled on October 7, 2002, and requesting Mr. Mahler give testimony as

a vocational expert primarily to cover the period from "April 25, 1946 through the present." This

letter was carbon copied to attorney Bailey.

(Id.)

That same date, ALJ Levine sent a letter to attorney Bailey indicating that any evidence must

be submitted ten days prior to the hearing date. Judge Levine also requested counsel obtain and

submit all updated medical evidence and a Pre-Hearing memorandum, along with several forms to

be completed by Plaintiff. He enclosed an exhibit list for counsel's review.

(Id).

11

There is no further mention in the record of a hearing. Instead, on October 28, 2002, ALJ Levine entered an Order of Dismissal (Defendant's Exhibit 9). Judge Levine first notes that Plaintiff's February 5, 2002, application for DIB was denied initially on March 5, 2002. He then notes that Plaintiff did not request a reconsideration, but filed a request for hearing on July 19, 2002.[3] Judge Levine then states:

> Social Security Regulations No 4, Sections 404.930 and 404.957(c)(2) provide that the claimant is not entitled to a hearing when there has been no reconsideration determination on the issue under appeal. Thus, the claimant's request for hearing should be dismissed for this reason alone.

Judge Levine does not simply dismiss the case at that point, however, instead discussing the merits of the claim. He notes that Plaintiff filed an application for SSI on January 20, 1981, but not for DIB, "because it was not readily apparent that the claimant was insured for benefits." He then notes the SSI application was denied on medical issues. He then notes Plaintiff "apparently filed concurrent applications for [SSI and DIB] on October 5, 1981, with the application for [SSI] filed protectively August 31, 1981." Judge Levine correctly notes the DIB claim was denied on October 26, 1981, based upon the psychological evaluation performed in March 1981 for the January 1981 SSI application. He also correctly notes Plaintiff's SSI claim was disallowed based on excess income, and that the Notice of that determination was sent to paralegal Dale Thien of Legal Aid.

Judge Levine goes on to state that Plaintiff subsequently filed concurrent applications for SSI and DIB on November 16, 1982. He then states:

> The subsequent application for Title II [DIB] was held in the District Office for a technical denial, presumably because the claimant previously had an unfavorable determination after June 30, 1980, the date he was last insured for benefits. In

_____

[3]This date is clearly incorrect, as the evidence shows Judge Levine responded to Plaintiff's Request for Hearing on May 14, 2002.

connection with the [SSI] application November 16, 1982, a fully favorable hearing decision was issued October 31, 1983, finding that the claimant was under a disability for the period beginning November 16, 1982. The Administrative Law Judge did not find a reason to reopen the previous Title II [DIB] denial of October 27, 1981. The claimant was represented at the hearing by an attorney, Harold E. Bailey, Jr.

The record clearly shows that the claimant was last insured for [DIB] on June 30, 1980. On October 27, 1981, it was determined that the claimant was not disabled through the date of that determination. The claimant was represented at the time of the previous [DIB] determination, as well as at a subsequent hearing held within the time range for possible reopening of the unfavorable [DIB] determination of October 27, 1981.

Social Security Administration Regulation No. 4 provides that generally if a claimant is dissatisfied with a determination or decision, but does not request further review within the stated time period, he loses the right to further review (20 CFR § 404.987). However, Sections 404.987 through 404.989 provide, in part, that a decision or determination which has become final and binding may be reopened within four years of the notice of the initial determination if there is good cause to do so . . . . The claimant's current application for [DIB] was not filed within four years of the previous unfavorable determination of October 27, 1981.

In view of the above, the final decision made on the claimant's application filed October 5, 1981 may not be reopened.

Social Security Administration Regulation No. 4 further provides that an [ALJ] may dismiss a claimant's request for hearing when the doctrine of res judicata applies. Res judicata is present when the claimant has had a previous determination or decision about rights on the same facts and on the same issue or issues and this previous determination or decision has become final by either administrative or judicial action (20 CFR § 404.957(c)(1).

The claimant's current request for hearing involves the rights of the same claimant on the same facts and on the same issues which were decided in the final and binding determination dated October 27, 1981 made on the prior application.

Accordingly, the claimant's request for hearing filed on May 6, 2002 is hereby dismissed. The determination dated October 27, 1981 remains in effect.

Plaintiff filed a Request for Review with the Appeals Council on December 23, 2002

(Defendant's Exhibit 10). Counsel particularly pointed out that, at the time of the hearing before

13

Judge Shore in 1983, counsel (and apparently the Judge) was unaware Plaintiff had ever filed a DIB claim, was unaware it was being held in the district office, and was unaware Plaintiff had even been eligible for DIB. He further contended that Plaintiff was not represented by anyone in the prior Title II (DIB) claim. Finally, counsel argued that Plaintiff is mentally challenged, and, except for a period of four months, SSA has always found Plaintiff medically eligible for benefits.

The Appeals Council denied Plaintiff's request for review on September 9, 2003 (Defendant's Exhibit 11). In its Notice of Action, the Appeals Council stated:

> In the favorable decision dated October 31, 1983, the Administrative Law Judge found that you were disabled as of November 16, 1982, because your impairments met the severity of section 12.05C of 20 CFR Pt. 404, subpart P, appendix 1. Section 12.05C requires, among other things, mild mental retardation demonstrated by an IQ score of 70 or less. Your representative contends that you have been disabled since childhood and that the determination on your prior application for disability insurance benefits should be reopened. However, the record contains results of IQ testing conducted March 16, 1981, with IQ scores above 70. The Administrative Law Judge dismissed your request for hearing because the determination on the issue of disability prior to June 30, 1980 had become final. Given the IQ scores from 1981, the Appeals Council finds no reason to change the Administrative Law Judge's dismissal action.

## II. DISCUSSION

### A. Contentions of the Parties

Defendant contends:

1. The Court does not have jurisdiction to review this action because the Commissioner has not issued a "final decision" in connection with Plaintiff's February 5, 2002 DIB application because:

    a. Plaintiff failed to exhaust his administrative remedies because, after the adverse initial determination, he filed a Request for Hearing instead of a Request for Reconsideration; and

    b. The doctrine of res judicata applied to the 2002 claim because it was a duplicate of his October 5, 1981 DIB application which was denied, and which decision became final when Plaintiff did not appeal.

14

Plaintiff contends:

1.      The issue of administrative exhaustion has been waived by the Commissioner;

2.      Defendant should have treated the Request for Hearing as a Request for Reconsideration;

3.      Because exhaustion is waivable, failure to exhaust is not a jurisdictional bar;

4.      The principle of res judicata is inappropriately applied to the facts of this case.

5.      Plaintiff has alleged a denial of his Constitutional rights, a claim over which the Court has jurisdiction.


## B.      Jurisdiction

Defendant first argues this Court does not have jurisdiction over this matter because the dismissal of Plaintiff's claim was not a "final decision" reviewable by the Court. Judicial review of the Commissioner's final decision is set forth in the Social Security Act, 42 U.S.C. §405, as follows:

> (g) Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the commissioner of social security may allow.

> (h) The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . .

> The Fourth Circuit has held :

> In *McGowen v. Harris*, 666 F.2d 60, 66 (4th Cir. 1981), we pointed out that where administrative res judicata is applied to deny a claim, the district court perforce has jurisdiction to determine whether the Secretary properly applied res judicata under

its inherent jurisdiction to determine its own jurisdiction. Under 42 U.S.C. § 405(g), the district court has jurisdiction to review the Secretary's final denial of claims if the Secretary based denial on a hearing. If the Secretary properly applied res judicata without a hearing, the district court has no jurisdiction to conduct further review because the Secretary's denial was properly made without a hearing. *[Califano v.] Sanders*, 430 U.S. at 108, 97 S. Ct. at 985. However, if in determining the jurisdictional issue the district court finds that the Secretary improperly applied res judicata, the district court has jurisdiction to remand for the hearing due but improperly denied. *McGowen*, 666 F.2d at 66.

Shrader v. Heckler, 754 F.2d 142 (4th Cir. 1985). This Court therefore clearly has jurisdiction to determine whether Defendant properly applied res judicata without allowing Plaintiff an opportunity for a hearing.[4]

Further, as will be discussed later in this Opinion, the undersigned also finds the Court does have jurisdiction to address the merits of the case.

## C. Exhaustion of Administrative Remedies

Defendant argued at the October 13, 2004, hearing that Plaintiff's Complaint should be dismissed for failure to exhaust his administrative remedies. The Court notes this argument was first raised at the hearing, and not in Defendant's Motion to Dismiss. The Regulations provide that a claimant must complete a four-step administrative review process within certain time periods to obtain a judicially reviewable "final decision." 20 CFR §§ 404.900(a), 416.1400(a)(2004). This

---

[4] Shrader v. Harris, 631 F.2d 297 (4th Cir. 1980), a prior Fourth Circuit decision regarding the same claim, also provides the Court with the procedural posture for deciding this case. Shrader's request for a hearing was also dismissed on the basis of res judicata. The Appeals Council affirmed in that case, as it did here. Shrader then filed a Complaint in the district court asserting, at least by implication, that he was denied due process. The Secretary filed a motion to dismiss and the district court dismissed the case for lack of jurisdiction. The Fourth Circuit reversed and remanded to the Secretary for a hearing. Although as here, the administrative record and other evidence was submitted, neither the district court nor the Fourth Circuit converted the motion to dismiss into a motion for summary judgment. The undersigned will therefore follow the same procedure.

four-step process involves seeking an Initial Determination, Reconsideration, an Administrative Hearing before an Administrative Law Judge, and Appeals Council review. Id. Section 405(g) of Title 42 of the United States Code authorizes judicial review only of a "final decision of the Commissioner of Social Security made after a hearing." The Commissioner may decline to issue a "final decision" if the claimant failed to exhaust administrative remedies or if the doctrine of res judicata applies. 20 CFR §§ 404.957 (c)(1), (2); 416.1457(c)(1), (2).

Defendant argues that Plaintiff, through counsel, applied for DIB on February 5, 2002 and the State agency denied the application at the Initial stage on March 5, 2002. Plaintiff therefore had until May 4, 2002 to request reconsideration, but skipped this second step, instead requesting a hearing (third step) before an ALJ "on July 19, 2002." Defendant argues the ALJ therefore declined to issue a "final decision" because Plaintiff failed to exhaust his administrative remedies and because of res judicata.

Defendant is clearly incorrect regarding Plaintiff's representation and the dates in the current claim. Plaintiff filed his current application for DIB on February 5, 2002. The evidence shows, however, that he did not appoint attorney Bailey to represent him on this claim on April 29, 2002. This supports Plaintiff's claim that he was encouraged to apply for DIB by an SSA employee, who also assisted him in filing the application. He was therefore pro se when he filed his claim. It is also clear from the evidence that Plaintiff did not file his request for hearing on July 19, 2002, as claimed by the ALJ, but on May 3, 2002, within the time permitted to file a request for reconsideration. This is evidenced not only by the date on Plaintiff's counsel's request, but also by the fact that the ALJ wrote a letter to Plaintiff on May 14, 2002, confirming he had received the request for hearing.

Still, there is nothing in the evidence indicating Plaintiff filed an actual request for

reconsideration before filing the request for hearing. This omission does not mandate dismissal, however. In <u>Mathews v. Eldridge</u>, 424 U.S. 319, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court stated:

> [T]he Secretary may waive the exhaustion requirement if he satisfied himself, at any stage of the administrative process, that no further review is warranted either because the internal needs of the agency are fulfilled or because the relief that is sought is beyond his power to confer. *Salfi* suggested that under §405(g) the power to determine when finality has occurred ordinarily rests with the Secretary since ultimate responsibility for the integrity of the administrative program is his. But cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate. This is such a case.

The requirement that a claimant exhaust his remedies is therefore waivable by the Commissioner. The undersigned believes Defendant waived the requirement of a request for reconsideration before entertaining a request for hearing in this case.

Plaintiff filed a "Request for Hearing" (form HA-501), under cover of a letter also entitled "**REQUEST FOR HEARING**" (Id. at page 1), on May 2, 2002. Two weeks later the ALJ wrote to Plaintiff's counsel:

> We have received your client's request for a hearing before an Administrative Law Judge (ALJ). This letter tells you about the hearing process and things you should do now to prepare for the hearing. We will mail a Notice of Hearing to you and your client at least 20 days before the date of the hearing to tell you its time and place.
>
> The Hearing
>
> At the hearing, you and your client may present his case to the ALJ who will hear and decide it. The ALJ will consider the issue(s) you or your client have raised and the evidence now in his file and any additional evidence you provide. The ALJ may consider other issues as well, and, if necessary, change parts of the previous decision that were favorable to your client. The Notice of Hearing will state the issues the ALJ plans to consider at the hearing.
>
> Because the hearing is the time to show the ALJ that the issues should be decided in your client's favor, we need to make sure that his file has everything you want the

ALJ to consider. You and your client are responsible for submitting needed evidence. After the ALJ reviews the evidence in the file, he or she may request more evidence to consider at the hearing.

Providing Additional Evidence.

If there is more evidence you want the ALJ to see, get it to us as soon as possible. If you need help, you should contact us immediately. You may ask the ALJ to issue a subpoena that requires a person to submit documents or testify at the hearing.

(Plaintiff's Exhibit F).

Also on May 14, 2002, a Group Supervisor for the SSA Office of Hearings and Appeals sent attorney Bailey a letter requesting he "complete the enclosed questionnaires regarding your client's recent medical treatment, medications, and work history to expedite the processing of your client's hearing request" (Id.).

Over four months after the Request for Hearing was filed, Administrative Law Judge ("ALJ") Jay Levine sent a Notice of Hearing to Plaintiff, with a carbon copy to counsel. (Plaintiff's Exhibit G). The Notice states as follows:

I have scheduled your hearing for . . . Monday . . . October 7, 2002 [at] 9:00 AM [at the] Hampton Inn 1515 Johnson Avenue Bridgeport, WV 26330.
. . . .
**Issues I Will Consider In Your Case**
The hearing concerns your application of February 5, 2002, for a period of disability and Disability Insurance Benefits under sections 216(i) and 223(a) of the Social Security Act (Act).
I will decide if you have enough earnings under Social Security to be insured for Disability Insurance Benefits. If you do, I must decide if you became disabled while insured.
. . . .

**More About the Issues**
I plan to look with special care into the issue of whether you were disabled on any date through June 30, 1980, when you were last insured for disability benefits.
. . . .

(Id.).

That same date, ALJ Levine sent a letter to Vocational Expert Timothy E. Mahler, noting that Plaintiff had a hearing scheduled on October 7, 2002, and requesting Mr. Mahler give testimony as a vocational expert primarily to cover the period from "April 25, 1946 through the present." This letter was carbon copied to attorney Bailey.

(Id.)

That same date, ALJ Levine sent a letter to attorney Bailey indicating that any evidence must be submitted ten days prior to the hearing date. Judge Levine also requested counsel obtain and submit all updated medical evidence and a Pre-Hearing memorandum, along with several forms to be completed by Plaintiff. He enclosed an exhibit list for counsel's review.

(Id).

There is no mention in the five documents sent by the ALJ over the course of five months indicating there was any problem with Plaintiff's request for hearing. The undersigned finds this is evidence Defendant waived the requirement.

On October 28, 2002, the ALJ dismissed the claim without the promised hearing and without giving Plaintiff an opportunity to correct the deficiency, if any. Further, even though the ALJ stated the request for hearing should be dismissed for failure to file a request for reconsideration, he did not dismiss on those grounds. Instead he went on to discuss the merits of the claim.

Finally, after Plaintiff filed a request for review, the Appeals Council expressly considered the evidence and discussed the merits of Plaintiff's claim. The Appeals Council concluded:

> The Administrative Law Judge dismissed your request for hearing because the determination on the issue of disability prior to June 30, 1980 had become final. Given the IQ scores from 1981, the appeals Council finds no reason to change the Administrative Law Judge's dismissal action.

(Emphasis added).

20

For all the above reasons, the undersigned finds Defendant waived the waivable requirement that Plaintiff file a request for reconsideration before a request for hearing. In this regard, the undersigned also finds significant the fact that Defendant did not even raise this argument in her Motion to Dismiss, only bringing it up in the hearing.

Even if the Administration did not waive the requirement of a request for reconsideration, the undersigned finds, by the Administration's own policy, that the claim should not have been dismissed for that reason. Social Security Administration Program Operations Manual System ("POMS") provides "basic policies and procedures for developing and processing requests for reconsideration," including:

> 2. WHAT CONSTITUTES A REQUEST FOR RECONSIDERATION?
> a. A request for reconsideration can be either formal (made on prescribed forms), or informal (not made on prescribed forms).
> b. Informal requests for appeals can be implied or expressly stated.
> c. When a claimant or representative writes and/or submits additional evidence which indicates disagreement with a determination, a request for reconsideration is implied.
> . . . .
> 4. HOW TO REQUEST A RECONSIDERATION
> Formally on an SSA-561-U2 (Request of Reconsideration) or informally by letter or any other writing.

The undersigned finds that by its own policies and procedures, the Commissioner should have considered Plaintiff's Request for Hearing and cover letter as a Request for Reconsideration. A Request for Reconsideration was at least implied by Plaintiff's counsel's letter and request, "indicat[ing] disagreement with a determination."

Alternatively, Plaintiff provided several examples of "Order[s] of Dismissal" in other cases where the claimant did not request a reconsideration, but instead mistakenly filed a request for hearing. In those cases, the ALJ's each stated:

21

> Social Security Regulations No. 4, Sections 416.1430 and 416.1457(c)(2) provide
> that the claimant is not entitled to a hearing when there has been no reconsideration
> determination on the issue under appeal.
>
> Thus, the Administrative Law Judge dismissed the claimant's request for hearing <u>and
> the case will be returned to the District Office for review and processing of a request
> for reconsideration.</u>

(Emphasis added). By following this procedure, the claimant had the opportunity to correct the

omission before the claim was summarily dismissed. Significantly, after the court hearing on this

matter, the undersigned himself found an example in a subsequent unrelated court case, in which the

Administration simply treated a Request for Hearing improperly filed by the claimant as a request

for reconsideration.

The undersigned therefore finds this claim should not be dismissed on the basis that Plaintiff

failed to exhaust his administrative remedies. Further, the undersigned finds, and both parties agreed

at the hearing, that requiring the matter to go through a request for reconsideration at this point

would be futile, as counsel for Defendant stated she would simply also deny the request for review

based on res judicata.

## D. **Res Judicata**

Plaintiff filed concurrent applications for DIB and SSI on October 5, 1981 (SSI had a

protective filing date of August 31, 1981). Plaintiff's date last insured ("DLI") was June 30, 1980,

meaning he must show he was disabled on or before that date in order to be eligible for DIB.

Plaintiff's application is not available for the Court to review, because it was destroyed in accordance

with SSA procedure. The only record of the claim before the Court is the Disability Determination

and Transmittal, which states Plaintiff's diagnosis as Mental Retardation and denies his claim. The

Rationale for the Determination states that Plaintiff claimed he was unable to work because he could

not understand things well and could not read or write. The medical evidence also showed he had a speech impairment. The only medical evidence cited by the State agency was the psychological evaluation performed by Dr. Ledwell.

Contrary to Defendant's contention, there is no evidence Plaintiff was represented by counsel during this claim. Although he apparently had appointed paralegal Dale Thien of Legal Aid, the only evidence of record shows Mr. Thien was assisting Plaintiff with the problem of his overpayment and excessive funds due to inheriting his father's farm. In other words, his SSI claim. There is an exhibit showing Dale Thien was appointed by Plaintiff, signed by Plaintiff on August 12, 1981. However, as Plaintiff contends, the only decision "carbon copied" to Mr. Thien is the "Notice of Disapproved [SSI] Claim." This contention is also supported by Defendant's own Declaration, which indicates that a copy of the February 8, 1982 denial of SSI benefits because of excess resources "was sent to [Plaintiff's] representative" (Declaration of Robin M. Marquis at (c)), and that a copy of the favorable 1983 SSI decision "was sent to [Plaintiff's] representative (Id. at (d)); There is no similar statement that the determinations dated October 26, 1981 and May 26, 1981 were sent to a representative. The DIB Determination itself has no indication it was "cc'd" to anyone. Further, in the remaining record submitted by Defendant is Plaintiff's counsel's original brief to the ALJ in 2002, stating that "Mr. Thien inquired of the status of John's SSI claim because there are Social Security internal notes of contact dated August 31, 1981, dealing with Mr. Thien's inquiry and subsequent September 4, 1981 notes more clearly explaining John's SSI ineligibility due to Public Law 96-611" and "the last documentation we see of Mr. Thien is a letter of September 15, 1981 to him from David Ulerich setting forth written explanation of John's said denial through applicable PL 96-611" and "we would affirmatively state and cite that West Virginia Legal Services, by their

very Charter and theory do not accept nor represent individuals in fee-producing Title II claims." The contention that Mr. Thien represented Plaintiff only regarding his SSI ineligibility is further supported by an "Application for Supplemental Security Income" in the record, signed by Plaintiff on September 4, 1981, explaining his inheritance from his late father and why it was sold to his mother for less than market value. There is no concurrent DIB application. The record shows Plaintiff did not apply for DIB until October 5, 1981.

The undersigned therefore finds the evidence supports Plaintiff's contention that he was not represented during the DIB claim at issue or the denied SSI claim that preceded it (and which evidence was used to deny the DIB claim).

It is undisputed that Plaintiff did not appeal the denial of his DIB claim or the original two SSI claims. Instead, on November 16, 1982, slightly more than a year after the DIB denial, Plaintiff filed a second application for DIB, along with a third application for SSI. It is also undisputed that on October 31, 1983, Judge Shore found Plaintiff was disabled since at least November 16, 1982, his application date. Again, the application itself is not available for review, but Judge Shore found the medical evidence substantiated Plaintiff's "allegations of disability with diagnoses of mental retardation . . . with questionable organicity . . . ; generalized anxiety disorder . . . . with significant dependency traits . . . ; and, a speech impediment." Further, Judge Shore noted that a "supplemental psychiatric residual functional capacity evaluation of record . . . reveal[ed] that the claimant's ability to relate to others is severely impaired; with a severe limitation on the ability to understand, carry out or remember instructions; a moderately severe degree of restriction on daily activities and deterioration of personal habits; and, a moderately severe impairment of ability to perform simple tasks. In addition, he is not competent to manage his own funds." Judge Shore's actual Findings

24

stated that the medical evidence established that Plaintiff had "severe mental retardation, speech impediment, and generalized anxiety disorder with significant dependency traits;" that he met or equaled Listing 12.05C; and that the severity of his impairments "ha[d] precluded him from working for at least 12 continuous months." As already noted, Listing 12.05C requires a claimant be found to have mental retardation with an onset before age 22. This would indicate Judge Shore found Plaintiff had been mentally retarded since long before his date last insured.

The undersigned notes that again, this decision contains a notation that it was cc'd to Plaintiff's representative, attorney Harold Bailey, Jr., while no DIB determination ever had such a notation.

Defendant argues that Judge Shore "found no reason to reopen the DIB denial dated October 26, 1981." (Defendant's brief at 2). This is not an accurate interpretation of Judge Shore's decision. Judge Shore <u>only</u> found that he could not reopen the prior <u>SSI</u> applications, and that finding was based <u>only</u> on the determination that Plaintiff "was above the required resource limit until December 1982." Judge Shore continued, "[u]nder Section 416.3356 of Regulations No. 16 <u>the claimant therefore cannot be paid</u> under the first and second application in this case; but, his third (November 16, 1982) application, properly filed before the month in which the other requirements for eligibility were met, will be adjudicated herein." (Emphasis added). Despite mentioning every prior SSI application Plaintiff ever filed, Judge Shore did not mention <u>any</u> DIB application in his decision. It is clear to the undersigned therefore that Judge Shore was unaware of any DIB applications. He therefore did not have the opportunity to decide whether the 1981 claim could or should be reopened. From the decision, it is also apparent to the undersigned that the only reason Judge Shore did not reopen the earlier SSI claims was because he could not, due to Plaintiff's excessive resources. From

the statement, "the claimant therefore cannot be paid" the undersigned believes Judge Shore would have been inclined not only to reopen the claims, but to award benefits, had Plaintiff's resources not exceeded the allowable limit.

The undersigned admits there is no way of knowing for certain that Judge Shore would have reopened the DIB claim had it been before him. It is clear, however, that he did not dismiss any of Plaintiff's prior claims based on res judicata. He certainly could have denied the SSI claims on the exact same basis that Defendant argues the DIB claim should be denied. A review of the decision therefore supports Plaintiff's contention that Judge Shore would have reopened the DIB claim. He found Plaintiff disabled based in part on the psychological evaluation used to deny Plaintiff's original DIB application at the initial level, at a time when Plaintiff was not represented. There is, however, no dispute that, despite the low IQ's found by Dr. Ledwell, her only diagnosis was generalized anxiety disorder. Yet Judge Shore also cited a new psychiatric evaluation which indicated Plaintiff was mentally retarded, had significant dependency traits, and had severe impairments in his ability to relate to others, understand, remember and carry out instructions, daily activities, deterioration of personal habits, and ability to perform simple tasks.

It is also clear that Judge Shore had the ability to reopen the DIB claim had he been aware of it. The application for DIB was filed on October 5, 1981, and Plaintiff was determined to be not disabled on October 26, 1981. He was not represented and he did not move for reconsideration of that determination. According to the record, he filed again for DIB on November 16, 2002. The Regulations provide for the reopening of a claim within four years of the date of the notice of the initial determination for good cause. 20 CFR § 404.988. "Good cause" is further defined as provided by "[n]ew and material evidence;" or "[t]he evidence that was considered in making the

determination or decision clearly shows on its face that an error was made." 20 CFR § 404.989. While it is not possible to determine why Judge Shore considered reopening Plaintiff's prior SSI claims, he must have found "good cause" for doing so. It is clear from the evidence, however, that neither Judge Shore nor Plaintiff's counsel were aware there was a DIB claim being "held in DO," and it is also clear from the evidence that Plaintiff was mentally unable to assist counsel or the ALJ in discovering that claim.

There are additional reasons the undersigned finds Plaintiff's claim should not have been summarily dismissed on the basis of res judicata. Plaintiff was diagnosed with Mental Retardation. Even SSA found him Mentally Retarded. Judge Shore expressly found Plaintiff suffered from the severe impairment of Mental Retardation and further found he met Listing 12.05C for Mental Retardation. The Fourth Circuit holds that the Secretary's regulation "expressly define[s] mental retardation as denoting 'a lifelong condition.' " Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir.1985). The Listing requires the claimant's impairment manifest itself before age 22. Judge Shore therefore found Plaintiff was mentally retarded prior to age 22, which was prior to his date last insured.

Plaintiff filed his first DIB claim in 1981. In 1980, the Fourth Circuit decided Shrader v. Harris, 631 F.2d 297 (4th Cir. 1980). Shrader presented the following narrow issue:

> [W]hen mental illness precluded a pro se claimant from understanding how to obtain an evidentiary hearing after ex parte denial of his application for benefits, does the summary dismissal on res judicata grounds of his motion for a hearing with respect to a subsequent application deprive that claimant of property without due process of law?

Id. at 301. Richardson v. Perales, 402 U.S. 389 (1971) recognizes that entitlement to Social Security disability benefits is a statutory property interest protected by the due process clause. Citing

Richardson, the Fourth Circuit answered the above question as follows:

> If the ex parte disposition of Shrader's 1974 application is allowed to support summary res judicata dismissal of all subsequent applications, Shrader, despite his incompetency, forever will be barred from obtaining a hearing on the merits of his claim.

The Court then remanded the claim in order for the Commissioner to conduct a hearing on Shrader's competency before invoking the doctrine to bar his subsequent claim. The Court stated of this procedure:

> It will prohibit the Secretary from summarily invoking the doctrine of res judicata when a claimant presents prima facie proof that mental illness prevented him from understanding the procedure necessary to obtain an evidentiary hearing after the denial of his prior pro se claim. Instead, the Secretary will be obliged to conduct an evidentiary hearing to determine the claimant's mental competency. Only if the claimant is found incompetent need the secretary afford him an evidentiary hearing on the merits of his claim.

Id. at 302.

The undersigned finds the facts and law of Shrader control in this case. At the very least, therefore, Plaintiff was entitled to a hearing to determine his competency during the pendency of the original claims before his claim was denied due to res judicata. Said denial therefore violated Plaintiff's constitutional rights to due process.

The undersigned believes, however, that Plaintiff has already been determined to have been incompetent to appeal the DIB determination at issue, as well as the original unappealed SSI claim which was used to deny the DIB claim. Judge Shore expressly found him to be severely mentally retarded, and even determined he was not competent to manage his own funds. The undersigned therefore believes an evidentiary hearing to determine Plaintiff's competency would be redundant and a waste of the Commissioner's already-overtaxed resources.

The undersigned therefore finds "the Secretary may not constitutionally refuse to reopen

[Plaintiff's] 1982 DIB application." See Culbertson v. Secretary, 859 F.2d 319 (4th Cir. 1988) (citing Shrader). Further, in Young v. Bowen, 858 F.2d 951 (4th Cir. 1988), the Court stated:

> In the context of social security law, both res judicata and administrative finality accomplish one similar task - - they prevent reexamination of the merits of an administrative decision. This may be an acceptable and even salutary result when a claimant has had a full and fair opportunity to establish any statutory entitlement. It offends fundamental fairness, however, to bind a claimant to an adverse ruling who lacks both the mental competency and the legal assistance necessary to contest the initial determination. That is the core of our decision in Shrader and it operates with equal force whether the Secretary relies upon res judicata or some other procedural limitation.

The undersigned is compelled to point out one other Fourth Circuit decision, albeit an unpublished one. In Fowler v. Sullivan, 1989 WL 69957 (4th Cir. 1989) (unpublished), the Fourth Circuit noted:

> Section 5(c)(3) of the Social Security Disability Benefits Reform Act of 1984 requires the Secretary to re-examine cases in which an individual had a mental impairment and was found not to be disabled between March 1, 1981 and the date of the 1984 amendments.

(Emphasis added).[5]  Plaintiff's original SSI application, which was denied, was decided on March 24, 1981, and the original DIB application, which was also denied, was decided on October 26, 1981. Yet there is no evidence that Plaintiff received any notification that he could seek review of his claim, or that the Secretary re-examined his claim. This further supports Plaintiff's argument that the 1981 DIB claim, which was "held in DO," was simply forgotten by all parties involved.

For all the above reasons, the undersigned finds Plaintiff was denied his due process rights by the summary dismissal of his claim based on either administrative finality or res judicata. The

---

[5]The undersigned notes that Culbertson, Young, and Fowler were all decided after Plaintiff's original claims were denied. They are all based, however, on Shrader, which was decided before the relevant time, and which clearly indicates the Fourth Circuit's position on the issue.

undersigned therefore also finds the Court clearly has jurisdiction to hear and decide the merits of the case:

> The judiciary, and not the Secretary, is the appropriate forum for the resolution of constitutional issues. See Califano v. Sanders, 430 U.S. 99, 109, 97 S. Ct. 980, 986, 51 L.Ed.2d 192 (1977).

Shrader, supra, at 302.

For all the above reasons, the undersigned recommends Defendant's Motion to Dismiss be **DENIED**.

The undersigned further finds that having this claim continue through the Court would be futile, as Defendant has already stated that the records submitted to the Court with her Motion to Dismiss were all that were available. The undersigned also assumes that both parties made their best arguments and that Summary Judgment arguments would be merely redundant and wasteful of both the Court's and the parties' time. The undersigned therefore recommends the case be reversed and remanded to the Commissioner for the hearing that was improperly denied Plaintiff. The undersigned also recognizes that the proper procedure under Shrader would be for the Commissioner to first have an evidentiary hearing regarding Plaintiff's competency to appeal his original DIB claim. As already discussed, however, ALJ Shore already determined Plaintiff was incompetent even to manage his own funds as of November 1982 because of mental retardation with questionable organicity, generalized anxiety disorder with significant dependency traits, and a speech impediment. By his finding that Plaintiff met Listing 12.05C, he also already determined that Plaintiff's "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested [itself] during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22." Listing 12.05. This decision by a Social Security

Administrative Law Judge is <u>res judicata</u>. Further, the Fourth Circuit has held that mental retardation is a life-long condition.

The undersigned therefore finds Defendant has already expressly determined that Plaintiff was mentally retarded at the time he filed the original SSI and DIB claims. He also finds Judge Shore's decision clearly shows "mental illness prevented [Plaintiff] from understanding the procedure necessary to obtain an evidentiary hearing after the denial of his prior pro se claim." <u>Shrader</u>, <u>supra</u>, at 302. There should therefore be no need for an evidentiary hearing regarding Plaintiff's mental capacity to appeal his prior DIB claims.

Indeed, the only remaining issue is whether Plaintiff was disabled on or before his date last insured, June 30, 1981. This seems only fair, as ALJ Levine stated in his Notice of Hearing (before he instead dismissed the claim):

> **Issues I Will Consider In Your Case**
> The hearing concerns your application of February 5, 2002, for a period of disability and Disability Insurance Benefits under sections 216(i) and 223(a) of the Social Security Act (Act).
> I will decide if you have enough earnings under Social Security to be insured for Disability Insurance Benefits. If you do, I must decide if you became disabled while insured.
>
> . . . .
>
> **More About the Issues**
> I plan to look with special care into the issue of whether you were disabled on any date through June 30, 1980, when you were last insured for disability benefits.
>
> . . . .

The undersigned admits to being sorely tempted to recommend reversing and remanding this claim solely for calculation and award of benefits. The evidence still of record supports a determination that Plaintiff, considered by SSA to be disabled until at least March 1978, and again from November 1982 at the latest, due to severe mental retardation and other severe mental impairments, was most certainly also disabled on or before June 30, 1980. Additionally, it is not lost

31

on the undersigned that Plaintiff has been denied the opportunity to be heard on the matter for nearly 25 years due to the claim being "held" in the district office. Only after a conscientious SSA employee discovered Plaintiff may have been eligible for DIB benefits, did anyone, including Plaintiff, become aware there was a DIB claim outstanding. Yet, after discovering the claim, Plaintiff has had to wait again just for an administrative hearing on the matter. Finally, Counsel for Plaintiff stated his belief at the hearing that the amount due to Plaintiff, if he were awarded benefits, would not be large, but would be, along with medical benefits, significant to Plaintiff.

The undersigned Magistrate Judge feels constrained, however, to follow the Fourth Circuit's finding in Shrader:

> The judiciary, and not the Secretary, is the appropriate forum for the resolution of constitutional issues, See Califano v. Sanders, 430 U.S. 99, 109 97 S. Ct. 980, 986, 51 L.Ed.2d 192 (1977). Nevertheless, the fact-finding process necessary to execute a court's constitutional decision is the province of the Secretary and not the district court.

Shrader, supra, at 302.

The undersigned therefore respectfully recommends this case be reversed and remanded for a hearing, solely for the purpose of determining whether Plaintiff was "disabled on any date through June 30, 1980."

### III. RECOMMENDED DECISION

For the reasons above stated, the undersigned recommends Defendant's "Motion to Dismiss Plaintiff's Complaint" [Docket Entry 5] be **DENIED;** the Commissioner's decision be reversed and remanded in accord with the recommendations as stated in this Report and Recommendation/Opinion; and this matter be dismissed and stricken from the court's docket.

Any party may, within ten (10) days after being served with a copy of this Report and

Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, Chief United States District Court Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this _15_ day of September, 2005.

John S. Kaull
United States Magistrate Judge